IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

REGINA A. STANLEY,          )
                                      )
        Plaintiff,          )
                                      )
                                      )              7:22cv00104
v.                              ) Case No. _____
                                      )
TOWN OF ROCKY MOUNT, VIRGINIA, )
**Serve: Robert J. Wood, Town Manager** )
       **345 Donald Avenue**       )
       **Rocky Mount, Virginia 24151**  )
       **(Franklin County)**       )
                                      )
        Defendant.       )

## COMPLAINT

Plaintiff Regina A. Stanley, by counsel, files this complaint against defendant Town of Rocky Mount, Virginia (hereinafter, "defendant" or "the Town"), and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION, VENUE, AND PARTIES

(1)    This is an action for sex and disability discrimination and retaliation authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*

(2)    This Court has jurisdiction over the Title VII claim pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4).

(3)    This Court has jurisdiction over the ADA claim pursuant to ADA Section 107, 42 U.S.C. §12117, which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§2000e-5, *et seq.*

1

(4)     Plaintiff timely filed a charge of discrimination dated May 26, 2020 with the Equal Employment Opportunity Commission (EEOC) and the Virginia Council on Human Rights; received a notice of right to sue dated December 16, 2021; and commenced this action within 90 days of receipt thereof.

(5)     On information and belief, defendant is a municipality organized pursuant to the laws of the Commonwealth of Virginia, *see, e.g.*, Va. Code §15.2-104 (1950), as amended, doing business in the Western District of Virginia and elsewhere.

(6)      At all times material hereto, defendant is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a).

(7)     At all times material hereto, defendant was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto defendant was a person engaged in an industry affecting commerce which had fifteen or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(8)     At all times material hereto, defendant employed approximately 75 full-time and part-time persons, approximately 31 of whom worked for the Town's Police Department (the "Department").

(9)     Venue properly lies in the Roanoke division of the western district of Virginia in that all of the discriminatory acts alleged herein occurred in the western district of Virginia.

(10)     Plaintiff at all times material hereto was a resident of the Commonwealth of Virginia and was an "employee" of the Town of Rocky Mount working as an

2

administrative assistant to Chief of Police Ken Criner in the Town's Police Department

(plaintiff is not certain of the precise legal name of her employer).

## STATEMENT OF FACTS

(11)    Plaintiff has been employed by the Town for approximately 24 years.

(12)    At all times material hereto, the Chief of Police was Ken Criner.

(13)    In January 2019, plaintiff was diagnosed with breast cancer (Invasive Ductal

Carcinoma, Triple Negative Breast Cancer, Stage 2) — an extremely aggressive cancer.

(14)    Treatment required plaintiff to undergo numerous medical tests, doctor visits,

chemotherapy, surgery, and radiation for many months.

(15)    Plaintiff kept Criner aware of her doctor's visits, chemotherapy, surgery, and

radiation, so that he would know when she had to be out of the office.

(16)    Despite her cancer treatment, plaintiff worked every day she was able to do

so.

(17)    Plaintiff underwent two types of chemotherapy which eventually weakened

plaintiff to the point her white blood cell count dropped very low, and she had to be

hospitalized for blood transfusions.

(18)    Though plaintiff kept Criner updated on her progress and appointments, he

rarely acknowledged her texts.

(19)    Instead, Criner frequently made negative remarks about plaintiff and her

cancer.  For example,

a.    While plaintiff was working and undergoing chemotherapy, Criner stated to

other employees in the police department that the "bitch [Stanley] is milking it."

b.    When friends organized fundraisers to help plaintiff with expenses, Criner told

3

police department employees that insurance was paying for plaintiff's doctors' bills, and that plaintiff used the money raised to go on vacation, and that plaintiff was abusing her sick leave.

c.      None of this was true.  To the contrary, plaintiff was fighting for her life and underwent major surgery to include a lumpectomy, breast reduction, and reconstruction.

d.      Instead of supporting plaintiff, Criner complained about the time plaintiff had to miss from work for cancer treatment and made hurtful comments about plaintiff's cancer to other police department employees such as, "the bitch gets a little bump on her titty and has to be out five weeks."  Criner's comments were malicious and cruel.

e.      At times, plaintiff's immunity was weakened as a result of the cancer treatments.  In November and December 2019, for example, Stanley was particularly susceptible to viruses due to her weakened immune system and would occasionally cough at work.  When she did so, Criner responded by spraying disinfectant spray in the hallway and directly at Stanley and stated to police department employees that "the bitch is barking like a seal."

f.      On or about May 19, 2020, Criner sprayed so much disinfectant spray that plaintiff had to put on a face mask just to breathe.

g.      Criner's comments created an extremely hostile work environment, to the point one police sergeant pointedly told Criner, "give her a break, Chief, she has cancer."

h.      Criner also frequently made offensive comments concerning women generally and referred to plaintiff and other women as "bitches" and "cunts."

i.      Karry Hodges also worked as an administrative assistant in the police department.  With respect to Hodges and Stanley, Criner stated to police department employees that if he could get rid of "the two bitches" in the police department, then he could "hire some hotties" to work there.

j.      Criner also told police department employees that if either Hodges or Stanley was out, then he could "get that fine piece of ass Shelley (another female employee who worked for the Town) to come help out in the police department.

k.      With respect to another female employee who worked for the Town, Criner stated, "that bitch never works" and frequently referred to women as "bitches."

l.      One day when an attractive woman walked by a window in the police department, Criner looked at her and stated, "I would tap that," a reference to having sex with the woman.

(20)    Criner's conduct created an extremely hostile and offensive work environment and made it difficult for plaintiff to do her work.

(21)    Plaintiff complained to police officers, at least one member of Town Council, the Town Manager, and other employees about Criner's comments, and other persons complained about Criner's treatment of plaintiff and other matters alleged herein as well.

(22)    As Criner learned about the complaints, Criner and his henchmen retaliated against plaintiff, further exacerbating an already hostile work environment, all in an effort to try to get her to resign from the police department.

(23)     For example, on May 14, 2020, Criner and Lieutenant Lovern changed the locks on their doors, making it more difficult for plaintiff to do her work.

(24)    Criner rarely spoke to plaintiff, making it harder to do her work, and Criner

and other officers who supported him walked around the police department slamming doors, like children.

(25)    Despite the complaints, the hostile work environment continued, and plaintiff filed a complaint with the Equal Employment Opportunity Commission and the Virginia Office of Civil Rights dated May 26, 2020.

(26)    When Criner learned that certain officers would complain when Criner made the above-referenced inappropriate comments concerning plaintiff, Criner made negative comments to the officers such as, "what, are y'all fucking her?"

(27)    On or around August 6, 2020, plaintiff left work in the afternoon for a three month follow-up breast mammogram in Roanoke (about 45 minutes north of Rocky Mount). When plaintiff told Criner where she was going, he asked sarcastically whether plaintiff would be at work the following day.  Plaintiff said that she would be at work (and she was).

(28)    The hostile work environment continued into 2021.  As of February 2021, for example, Criner and others ostracized plaintiff and frequently whispered with one another when plaintiff or fellow administrative assistant Karry Hodges, who also filed a charge of discrimination with the EEOC and OCR as a result of the hostile work environment (Exhibit 1), were near.  Criner and others also excluded plaintiff from group discussions and held meetings behind closed doors.  Criner and Lt. Lovern and other officers rarely spoke to plaintiff, all of which made it difficult for her to do her job and contributed to an ongoing hostile work environment.

(29)    On or around February 25, 2021, Criner and First Sargeant Richardson ignored plaintiff's greeting as she entered the office.

(30)    On or about March 2, 2021, plaintiff was called into the office, required by Lt.

Lovern to sign a Garrity warning, interrogated for approximately two hours and was accused of leaking information to social media and the public about a criminal investigation involving the Town clerk, who was later charged with shoplifting.  Lovern stated that it appeared that plaintiff was outside the office door on February 25, 2021 trying to eavesdrop on a conversation.  Plaintiff denied the allegations (they were not true) and told Lt. Lovern that she believed the accusations were more retaliation for complaining about Criner's unlawful conduct.  The accusations further exacerbated an already hostile work environment.

(31)    When plaintiff requested a copy of the recorded interrogation, the Department refused to provide it, and to this day has refused to provide the recording.

(32)    Lt. Lovern also told plaintiff that the Department intended to reduce plaintiff's security access on the Department's Records Management System (RMS).  Plaintiff had never been treated with such disrespect in her then more than 22 years of service to defendant.

(33)    On or about March 4, 2021, Lt. Lovern told plaintiff that she had to submit to a polygraph examination or that she could be terminated.  Lt. Lovern told plaintiff that she had until the following day to decide.

(34)    All of this was done in an effort to harass and intimidate plaintiff and force her to quit her job.

(35)    The Department never instructed plaintiff to submit to a polygraph examination "by written directive" as required by Virginia Code §40.151.4:4(B)(1950), as amended.

(36)    The stress caused by the harassment and retaliation caused plaintiff's hair to begin to fall out after it had grown back following chemotherapy.  As a result of defendant's actions, plaintiff suffered crying spells at work and became a nervous wreck.  As a result,

plaintiff sought medical care from her doctor.

(37)    The Town Manager was well aware of the harassment and retaliation and offered to move plaintiff from the Police Department to another department.

(38)    On or about March 6, 2021, Criner accused plaintiff of giving Covid to all of the employees in the Department (not true).

(39)    As a result of the continued harassment and retaliation, plaintiff filed a grievance with the Town Manager.

(40)    On or about March 18, 2021, Lt. Lovern sent an email to plaintiff and Karry Hodges instructing them not to open mail addressed to persons in the department but to instead deliver the mail to the individuals.  Previously, opening the mail had been part of plaintiff's (and Hodges') job duties.

(41)    On or about March 30, 2021, Lt. Lovern asked plaintiff whether she would be out of the office "all day" on April 7th (plaintiff had a root canal scheduled that day).  Plaintiff told Lt. Lovern that she planned to return to the office after the root canal.

(42)    On or about April 13, 2021, Criner came to the office angry and stated in a loud voice that he was "tired of this shit" and that he is "57 years old and if someone wants to fight, come on!"

(43)    On or about April 14, 2021, Criner told plaintiff that he had watched her on camera walk into his office and put mail on his desk then walk out.  This is exactly what plaintiff did as part of her job, but it was simply Criner's way of letting plaintiff know that her every move in the office was being watched.

(44)    On or about May 5, 2021, plaintiff called Lt. Lovern on his cell phone and told him that she had received a work ticket from IT asking whether they needed to come to the

office to set up laptops for new employees (Lt. Lovern was in Criner's office with other officers at the time). Lt. Lovern responded in a loud voice, "you have GOT to be kidding me," and then walked into plaintiff's office in an extremely angry manner with a red face and was extremely rude to plaintiff and Karry Hodges.

(45)    Afterward, plaintiff went to the bathroom and cried.

(46)    The department, particularly Criner and Lt. Lovern, continued to ostracize plaintiff and foster a hostile work environment, causing at least one officer to resign from the Police Department due to the hostility.

(47)    About this time, the Town hired a new Town Manager, Robert Wood.

(48)    On or about May 7, 2021, Lt. Lovern entered plaintiff's office and said that it was odd that plaintiff had been playing music in the office and that he had noticed that plaintiff and Karry Hodges had been leaving the office through different doors. Plaintiff explained that the music helped calm her nerves (Lovern said the music was not too loud) and that as far as she knew, she was leaving the office through the same door in the usual manner, and that he would have to ask Hodges whether she was leaving the office through a different door, or why.

(49)    On or about May 27, 2021, Criner, now Captain Lovern, First Sargeant Richardson, and part-time officer Tim Taylor were in Criner's office laughing loudly about a video apparently posted by a local citizen, Joe Stanley (no relation to plaintiff), concerning the Police Department. One of the officers commented that he "thought y'all was getting all greased up" — a reference to a sex act.

(50)    As of June 15, 2021, Criner and others permitted extremely sexual and otherwise offensive writings to be posted in the Police Department for all to see. Excerpts

include the following,

(a)    "Suck my asshole"

(b)    "You smell like shit"

(c)    "I hope you enjoyed your stay at the Red Oak Manor.  I know that were worried about you.  Especially after you touched that other old man and watched him beat his dick.  They were disturbed that you took his shit from his toilet & started eating it.  Completely unhealthy.  P.S.  Go fuck yourself sideways."

(d)    "Good morning Fuckface.  I understand you had a vaginoplasty done. Congrats on that.  You're [sic] vagina has been getting stretched pretty good while hanging out with (names omitted).  Be sure to perfume that stanky [sic] pussy before you get to work."

(e)    "I'm sorry about your sexual infection.  I'm sure they have medicine for that. Maybe you can use some vagina cream."

(51)    On or about June 15, 2021, plaintiff walked into the police department and said "good morning" to Criner and the other officers present.  In response, Criner responded in an extremely loud voice, "Good morning.  It's a beautiful morning.  I have a great job, great benefits and *I'm still sitting in this chair*" — to make the point that despite repeated complaints concerning him, he was not going anywhere.

(52)    After plaintiff complained about Criner, Criner excluded plaintiff from staff meetings (she had attended the meetings previously as part of her job as Criner's administrative assistant).

(53)    Criner removed the personnel files from plaintiff (maintenance of personnel files was previously part of her job duties).

(54)    Criner ordered that plaintiff's office be moved away from his office to some

10

other part of the building.

(55)    Criner instructed that plaintiff could no longer release police reports without the approval of Captain Lovern or First Sargeant Divers.

(56)    After plaintiff complained about Criner, she was removed from department emails, and two separate emails were established.

(57)    Capt. Lovern removed plaintiff's ability to make changes to the phone system, which was previously part of plaintiff's job as Criner's administrative assistant.

(58)    On July 14, 2021, plaintiff sent an email to Capt. Lovern in an effort to schedule an event for an employee who was retiring and stated, "Craig [Sloan] has stated his last working day will be Friday, July 30th.  I have personally worked with him for almost 23 years and would like to see us as a department maybe get him a cake that day congratulating him on his retirement.  Do you think it would be possible we could maybe grill some hotdogs and hamburgers for lunch on that day?  I will get a card for everyone to sign who wishes to do so.  I would be willing to pitch in and help with the food also if Dept can not cover it."

(59)    Capt. Lovern did not respond to the email.

(60)    Instead, Criner and Capt. Lovern and others took Officer Sloan to Texas Roadhouse in Roanoke for a retirement luncheon but excluded plaintiff (and Karry Hodges) from the event.

(61)    On August 18, 2021, plaintiff sent an email to Town Manager Wood about the ongoing harassment and retaliation and hostile work environment.

(62)    Approximately two weeks later, on September 3, 2021 plaintiff received an email from Capt. Lovern stating that he had received word that Criner had decided to retire and that Lovern had "been named Interim Chief."

(63)    On or about December 9, 2021, Interim Chief Lovern told plaintiff the Department required a note from plaintiff's dentist to justify her dental appointment. This did not make sense to plaintiff as she used PTO time to cover the dental appointment, and other employees are not required to have notes from their dentists to cover time missed from work.

(64)    Prior to complaining about Criner's unlawful conduct, plaintiff received annual performance evaluations, which are used by the Town to determine salary increases. At present, neither plaintiff nor Karry Hodges have received an annual performance evaluation in over two years.

### <u>COUNT I: CLAIM FOR SEX DISCRIMINATION AND HARASSMENT</u>

(65)    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(66)    At all times material hereto, defendant had a duty to maintain a work environment free of sex discrimination and harassment.

(67)    Defendant's acts and omissions created a work environment that was hostile and offensive to plaintiff and other women and which negatively impacted plaintiff's work.

(68)    Defendant further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to plaintiff and other female employees.

(69)    As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

(70)    At all times material hereto, defendant engaged in a discriminatory practice or

practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

(71)    The above-described acts of defendant constitute sex harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.*

## COUNT II: CLAIM FOR DISABILITY HARASSMENT AND DISCRIMINATION

(72)    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(73)    At all times material hereto, plaintiff was an individual with a "disability" within the meaning of the ADA in that she had a physical impairment that limited one or more of her major life activities, including but not limited to working, had a record of such impairment, or was perceived and regarded by defendant as having such impairment.

(74)    Plaintiff was a "qualified individual with a disability" as that term is defined by the ADA.  At all times material hereto, plaintiff was an individual with a disability who, with or without a reasonable accommodation, could perform the essential functions of her job.

(75)    Defendant, through its agents and employees, harassed plaintiff on account of her disability and created or permitted to exist a work environment that was hostile to plaintiff as a result of her disability.

(76)    Defendant knew or should have known of the harassment and hostile work environment.

(77)    Defendant's treatment of plaintiff constitutes harassment and discrimination against plaintiff with respect to the terms, conditions, and privileges of employment in violation of the ADA, as amended.

(78)    As a direct and proximate result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, loss of enjoyment of life, pain and suffering, and other non-pecuniary loss.

(79)    Defendant also acted with malice or with reckless indifference of plaintiff's federally protected rights so as to support an award of punitive damages.

## COUNT III: CLAIM FOR RETALIATION

(80)    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(81)    Defendant retaliated against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act.

(82)    As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

(83)    Defendant acted willfully toward plaintiff with actual malice or with reckless disregard of the protected rights of plaintiff so as to support an award of punitive damages.

WHEREFORE, plaintiff Regina A. Stanley demands judgment against defendant Town of Rocky Mount, Virginia for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to

the extent recoverable by law, and for such other and further relief as may be just and equitable.

Plaintiff demands trial by jury on all issues that may be tried before a jury, including arbitrability of any claim.

Respectfully Submitted,

REGINA A. STANLEY

By: /s/ Terry N. Grimes
                    Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
(540) 982-3711
(540) 345-6572 Facsimile
tgrimes@terryngrimes.com
        Counsel for Plaintiff